2-19-0027, people of the state of Illinois, Minnesota, Colorado, Mr. and Mrs. Shipp, defendants at the meeting. The party member on behalf of the state of Colorado, Mr. Richard S. Rundle. Everybody on behalf of the defendants at the meeting, Mr. Joshua M. Rundle. Mr. Rundle. Good morning, Your Honors. May it please the Court, counsel, Richard Rundle on behalf of the people of the state of Illinois. Your Honors, the only thing really clear on the remand of this case is that there really was a lack of clarity. The trial judge expressed significant confusion what his role should be, which is obviously unusual. The judge said basically, I'm not sure what I'm supposed to do. Can I stop you there? Sure. What about the document? I mean, we could affirm on any legitimate legal basis we see in the record. Of course. The reasoning is wrong, correct? Of course. Okay. We, in the Shipp 2, we sent the case back as OSED had requested for second stage proceedings. Correct. Correct. And that's obviously what should have been the analysis, and that's what the — On remand, did the state offer any new or additional evidence? Definitely. Well, let me rephrase that. The state offered similar evidence that it had offered previously. What the trial judge did was said, well, I'm acknowledging that this was offered prior. This was discussed. This was offered as an alternative basis at the motion to suppress. I didn't make a ruling on it because I thought I was — I clearly believed that my ruling based on totality of circumstances was sufficient. After this court made a definitive finding that I was wrong, again, based on a first stage standard, I'm now, you know, I'm now going to at least readdress that alternative basis. Again, when you — when the case went back, both parties had an opportunity to present evidence. Correct. Correct? Correct. You did not ask — the state did not ask the judge to reconsider his findings of fact from the original motion to suppress, correct? Not really. I mean, the court didn't say — Right. Yeah. And in the judge's — and the argument, the same argument that's made on appeal, that, you know, the walking in the street, was made in the trial court by the state's attorney himself, correct? Yes. The court — And the judge made this finding. Zolanik observed the male and female walking away from the intersection. This is at page 177 in the common law record, the court's findings. The court said, other than walking in the area at 5 a.m., neither the male or female were doing anything unusual, neither appeared to be out of breath or agitated, and neither appeared to be committing a crime. Those were his findings of fact. With all due respect, I don't think his findings of fact was based on the alternative argument. And when it went back on remand — That argument was made in the trial court. Correct. We must presume that the trial court was aware of the arguments, that he read the pleadings, and that he made those findings after doing so. Normally we should, but the court on remand specifically said, I didn't address it. I didn't really make findings of fact on the alternative argument. Didn't the trial court in its initial ruling, it never made any findings regarding the violation of any traffic laws? Correct. Correct. And it acknowledged that on remand and said, I guess I should have reached that. And on remand, the State's attorney did say, please consider this now. We didn't — we addressed it previously. This court did not make a determination based on that, and we are now asking you to do so. They obviously also said this court can and should reconsider and reweigh the facts in general based on a second stage. Tell us how the trial court's finding of fact that they appeared to be committing no crime is against the manifest way of the evidence. Because they were definitively committing a crime. They were committing an ordinance violation. How so? Walking down the street in the middle of the street. You're saying they were in the middle of the street. Correct. They were not. I just watched the video. Okay. They were not. Did you watch the video? I did not. And that misrepresentation was a bone of contention in the trial court. The defense counsel followed a memorandum pointing out that the State's attorney misspoke, that he was wrong, that they were not in the middle of the street. They were, as the statute provides, walking as close as possible to the edge of the roadway where the sidewalks are snow covered. Okay. And you can clearly see in the video the sidewalks, many of them, maybe some are cleared, but not all of them. There are mounds of snow everywhere. Let me ask a further question that gets into that issue. Of course. You can debate some of these procedural matters. The fact is, is it your position that the mere act of walking in the street is illegal? Walking across the street or walking? No, with the defense. The mere act of walking in the street is it your position that that in and of itself is illegal? Yes. It's pretextual. It's similar to if you're stopping a. . . I think you're ignoring an element. Doesn't the use of it have to be practicable? Yes. I'm sorry. Yeah. I did not follow. As you can see now, the mere act of walking in the street is also pretextual. Correct. If it is not practical, if the sidewalks are not clear. And, again, that is something that alternatively we would ask that this be remanded for a third stage hearing. Counsel, do you agree in having looked at the record here that there was no evidence presented to support your position that the sidewalk was clear? There was evidence. There was evidence presented. I mean, was the testimony. . . That the sidewalk was clear? Yes. The officer testified to that. Again, that could very well be a finding of fact that if the. . . And that was months later, the original hearing. And at the original hearing, the officer testified they were doing nothing illegal, correct? Correct. That was his original testimony. Correct. And months later, when the State's attorney realizes, wow, we're probably going to lose this motion, he calls the officer, puts him back on the stand, asks a couple of leading questions, and he says the sidewalks appeared to be clear. Okay. I don't think the State's attorney, at least initially, thought they were going to lose the motion. Well. . . I think they were pretty clear, and they indeed did win the motion. You asked my inference that someone thought we better put a little bit more evidence in the record. Correct. I think the State's attorney was. . . I mean, obviously it's speculated the other way. I think the State's attorney was just being. . . Cautious. Cautious and basically saying, you know, we are going to look at the alternatives. We think. . . And obviously they did win, and the trial judge made a finding in the State's favor relating to the totality of circumstances. When the officer originally testified, he was asked the question, would it be fair to say that they were just walking normally away down the road? He answered yes, and they appeared to be doing nothing illegal, nothing that I observed. Were they doing anything illegal? No. Again. Nothing that I observed. We obviously don't dispute that the officer said that, which is why we cited the case law related to the question is, if they were committing an offense, it doesn't matter the subjective. This is a circular argument. Well, of course. The trial court was familiar, had all these arguments. At the original motion to suppress, he rejected them and said that in his findings of fact, they were doing nothing illegal. The trial court said, neither appear to be committing a crime. Again, I understand, and I'm not disputing the specific comments of the judge. What I'm saying is the judge in essence himself on remand said, I did not reach that analysis. So the concept of not committing a crime was based on what we had discussed and briefed and discussed for last hearing, which is at first stage, was there evidence that a crime was committed relating to why they were called the same, the 911 call? Did the state ask the court to address that issue? Prior to remand? Right. No. Because basically they addressed it. They accepted the court's findings of fact. They did not attempt to correct the court's findings of fact. Your Honor, with all due respect, they're not going to challenge the findings of fact because they were successful. They're not going to have a sore winner say, wait a second, Your Honor. We won the motion. You found in our favor. We want you to go back and also make a finding based on the alternative basis. Did you read the trial court's memorandum of decision? On after remand? No, the initial. Yes. And the court separated his findings of fact from the analysis, correct? Correct. So how were his findings of fact in error? They weren't in error, but they didn't address this separate issue. Okay. I mean, again, obviously we have to agree to disagree. Mr. London, you misrepresented the record by saying that the defendant and his companion were walking down the middle of the street. What's your explanation for that? My explanation was I was citing the testimony of the officer. That's not his testimony. I did not. The officer said that they were walking down the street. You said the middle of the street in your brief. They were not. And that was not the officer's testimony. Again, that was a bone of contention by defense counsel. Defense counsel argued my clients were compliant with the law, walking along the edge of the roadway. They were not in the middle of the street, as the State had commented in the memo. The importance of reading the record here, it's an important fact. Again, I'm not disputing. I'm saying on remand. The officer testified it was a narrow roadway. They were on the east side. He was driving southbound. Right? That was the testimony. Obviously, I'm not going to dispute what the exact. I'm saying on remand it was clear that the people argued that the officer testified that they were walking in the street. If I inadvertently put middle, I apologize. But, again, the fact was the people had argued that the, indeed, defendant was guilty of an offense, an alternative offense. Can we get back to the overarching question of Sluming here? As we discussed, the mere act, I think you conceded, of walking in the street is not, under all circumstances, illegal. Correct. If the sidewalk was unclear. It's a language. Yes. So where in the record in this case is there evidence that the use of the sidewalk was practicable in terms of ineffective assistance? Was practicable or? Its use was practicable. Because the defendants argued that failure to raise that issue was an effective assistance of counsel. Again, if we're talking about prior to remand, the point simply is the, should the defendant have made that prior to the original decision, defense counsel? Possibly. It wasn't ruled on. I mean, what was the prejudice prior to remand when the judge didn't make that finding? Despite the people's request, should it have been discussed? Probably. Which is why our alternative argument is let's remand it for a third stage hearing for these issues to be determined. Was it practical? Was it not? I don't know because that was. The trial court made a finding that there was no crime. There was a finding of fact that they appeared to be committing no crime. And, again, you could argue until you're blue in the face. All of those arguments were made by the state's attorney in a memorandum, that oral argument on the motion. Correct. So you keep saying that, but that was a finding of fact by the trial court. I keep saying that, Your Honor, because, again, we'll have to agree to disagree. On remand, the judge said, the judge did not go so far as to say, wait a second. Based on the fact that I didn't analyze or consider the alternative basis, I now also think that I should have reanalyzed or redetermined whether or not the finding of facts of whether or not that was a violation. He didn't say that. It strongly implied when he said, I didn't reach that conclusion. I thought I was right until this court said, I'm not. I didn't even think I needed to make a determination. So would the judge have made a different determination if he was reaching that legal conclusion? And my answer is, he may well have. In the video, does it appear that it would have been practicable for the defendant and his companion to navigate those sidewalks? Does it? Come on, be honest. To be honest, again, I have to be more honest. He slipped on the ice. That's how he fell. That's how he got arrested. Well, slipping on the ice because there's black ice somewhere does not necessarily mean it's the same as the other. Are there mounds of snow? Yes. There are driveways that are blocked by the mounds of snow. There are sidewalks, some that are clear, most aren't. That's in the video. And that is something that the judge should determine. Well, how about us in determining whether or not? If the video is clear enough that there was nowhere that the defendant could have been walking at any point in time, and, again, we're not just talking, like, at the point that he was stopped. At some point in time. At some point in time. Is the defendant entitled to an answer in the interest of the judicial economy? Yes. So we're going to send it back for another third-stage hearing? Yes, in this case. Because the trial court. Would it be a frivolous argument? Well. In the trial court's original findings? Again, I mean, you know my position. Obviously, I know that the question you're asking, I don't think it's frivolous. I don't think that the trial court's original findings were based at all on whether anything addressing the ordinance violation. I hate to ask you a pointed question, because you've had to respond to no pointed questions here this morning. But the pointed question would be, if we look at the video and it's clear to us that the use of the sidewalk was not practicable, is there any impediment to us making that finding an affirming? No. If the video is clear enough that at no point in time could the defendant have been walking, and, again, the defendant was walking on the street, theoretically, for a while. If by the time the car pulled up and right there you can only see a certain portion, I think it's different. I think, yes. To do that, we would have to ignore the original testimony of the officer, the original findings by the trial court, and pretend like that never occurred. And how do you get over the hump? How we get over the hump is the officer's testimony wasn't based at all on the alternative finding. The officer testified basically based on the stop and frisk relating to the 911 call. Right. He did not really testify. And when you look at Fitzpatrick, the original basis for the stop in Fitzpatrick was that the defendant was walking down the middle of the street. Right? Correct. Now, here, this stop had zero to do with violating the ordinance or the statute. Subjectively, no question. We obviously, we don't dispute that. Right. It was an after-the-fact thought that was thrown in to justify the stop. Correct. But that is acceptable under the case law. It's not. I'm not suggesting that it's not. The problem is, does the evidence support it? And were the trial court's original findings against the manifest way to the evidence? To the extent that the trial judge didn't even subject it to. Mr. London, those were his findings of fact with this argument before the court. You know, we have to presume the trial court was familiar with the law and knew that an ordinance violation or violation of state statute would have justified the stop. But he didn't go there. And if there wasn't his additional comments on remand, I would completely agree and we wouldn't have made this argument. But on remand, when he said, wait a second, I didn't address that. I didn't think it was necessary. You'll have time for rebuttal. Thank you. Mr. Bernstein. Good morning, Your Honors. Joshua Bernstein for Philip Shipp. May it please the Court, counsel? Mr. Shipp. I, based on the exchange I just heard, I think I'm going to focus more on the procedural The issue I have with this entire argument they're bringing up is, frankly, that from the moment they did not ask the trial court for a finding regarding the legality of Mr. Shipp's walking in the street, they dropped the ball. They did not raise this issue in their appeal in this Court, and they, therefore, dropped the ball a second time. I believe those acts forfeited their right to raise this issue because this Court's ruling in Shipp 2, which is the 2015 case, became law of the case. And the law of the case here is that Mr. Shipp was illegally stopped. Mr. Shipp, there was an We were looking at whether or not the defendant made out a claim, the gist of the constitutional claim. We were not correct. That the gist of ineffective assistance, however, your opinion, Your Honor, is unequivocal that he was illegally stopped, he was illegally frisked, his flight from the illegal Terry stop did not attenuate the subsequent frisk in the finding of the gun, and therefore, he made the gist of an ineffective assistance claim. But in your brief, you only requested, in your brief in Shipp 2, only requested remand for second-stage proceedings, correct? You did not ask us to address the ultimate issue, correct? Well, that's true. And the reason we did that and the reason we do that in our briefs is because, as Your Honors are well aware, there certainly could have been issues that the procedural matters that the State could have raised in their motion to dismiss at the second  stage. Counsel, you have a good argument, you have a threshold argument on the failure of the State to raise the issue on the initial appeal, but aren't there cases that say that failure of the State to raise an alternative argument on direct appeal where the State is the prevailing party on a motion to suppress, it would be unfair to hold that it forfeited or waived the right on remand to address the matter. The Supreme Court seems to be saying, well, they were the prevailing party. Why do they need to raise an alternative argument? I don't actually see this as an alternative argument, Your Honor, because if you look at what the trial court did in this case, essentially what Judge Houser said is I don't even need to go to the initial stop. And the basis of the State's case at the suppression motion actually, it was not an alternative argument. It was their argument. It was their threshold argument. That's the questioning they did of Officer Zelaznik was about, you know, was he walking in the street and so on and so forth. So I don't see it as an alternative argument in the sense that it was a separate argument. This was an element of the State's burden of proof, right, that this was a legal stop and they didn't meet that element and they stood by silently. I confess, my trial court experience is in civil court. And the fact is when the judge was putting together an order on a dispositive motion and I saw that there was something missing from it, I would say it. No less important in a case like this where the threshold fact, which Justice Burkett pointed out, the judge said they were doing nothing wrong. They were walking, you know, they were in the street, but they were doing nothing wrong. They were doing nothing illegal. This ---- The trial court in ruling, and he cited Fitzpatrick and said in Fitzpatrick that the basis for the stop was walking in the street. And here it appears this was a threshold argument, correct? Well, I ---- it's an, you know, it's an argument they made. I mean ---- They made it originally in the trial court and now they're relying on that again. Yeah, but here's the problem. They made it in the trial court and then when it didn't make its way into the order, they also didn't make it on appeal when we were before you. And, you know, to the ---- They have an opportunity to raise that argument until there's a final disposition on the merits, correct? I suppose, yeah, that's true, Your Honor. But on the other hand, you, Your Honor, you wrote the opinion in SHIP 2. You know the briefing in this from that case. And if we're coming with a strong argument, obviously, that this was an illegal stop, for them to sit silent and then essentially ask for another suppression hearing to be held at the third stage after you've already made a ruling in this, that makes no sense. That's what triggers the law of the case from my perspective. Well, forfeiture aside, in the interest of justice, shouldn't we really address the issue given all the facts? I have two answers to that, Your Honor. And the trial court, you know, the trial court said that he contemplated a review by, he said, the Court of Appeals, by the appellate court, of the facts involved on this court's denial of the motion of suppression based upon those facts. And, again, he made findings of fact that he thought we would address that issue, which Mr. SHIP said, Judge, I was told I'd have an appeal. Yeah. And now here he is a third time. Your Honor, I would much prefer to not have been here altogether on this round, to be honest. But if I can answer about justice, and this is beyond the law of the case, it's Monday morning quarterbacking from the state to try to reopen the suppression hearing at a third stage evidentiary hearing where, in fact, the OSAD attorney testified. And if Your Honor's read his testimony, he actually, it appears, conflates the analysis for arrest with the analysis for a Terry stop, which, I mean, he didn't understand the law. Here's the question. Putting the context in, it gets remanded for this third stage hearing. Did it appear to you in looking at the record that the trial judge seemed a little confused about the role on remand? Did it almost seem like he thought he was mandated to grant the petition? As I argued in our briefs, I believe he was mandated to grant the petition. There's nothing left for him to decide except whether the – first of all, whether there were procedural matters that the State might bring up in a motion to dismiss. And I – What about the State arguing they should have had the right then to get into the alternative basis? I – The State clearly didn't want to go there, you know, so to speak, on an issue. So they were not given the opportunity to make that argument, were they, on this record? I think that's correct. I think the judge actually was doing what this Court's mandate required. This Court's mandate was for more post-conviction proceedings based on a finding that the search was illegal, as Justice Burkett pointed out, based on the trial court's findings from the original suppression hearing. And I'm sorry, it was ineffective assistance of counsel. And I think that the hearing showed that the appellate defender was ineffective. He did not understand the law, first of all. And second of all, as I said, the Act gives everyone an opportunity to file a motion to dismiss a pro se or even a counseled claim at the second stage. And the State could have done that. That's really, you know, following the procedures of the Post-Conviction Hearing Act is what we ask this Court to offer, just to make sure. That's really it. So essentially, as you might imagine, I'm asking you to affirm, I think the trial court did the right thing by following the only logical course of action based on this Court's opinion in Chip 2. And unless Your Honors have any other questions. Thank you, Your Honors. Mr. Wonderman, go ahead. Your Honors, as I opened with, that the only thing clear is that there was no clarity. If this Court intended that the findings made in Chip 2 was going to be mandated, that they didn't want the trial judge to make any determination, then this Court would have vacated outright the conviction. It remanded for findings. The judge clearly said multiple times, I don't know what I'm supposed to do. The ultimate decision in the opinion said, I must do this. He accepted defense counsel's argument that he didn't have any, that he wasn't subjecting the case to an analysis. In addition, going back to the question that asked initially, we're not here to determine whether or not defendant is guilty of an offense, even the alternative argument. We're here to determine if the record is sufficient to establish that there was a reasonable suspicion to believe. Was there a reasonable suspicion to believe? Obviously, the police officer felt that that was the case. The judge's findings, and again, we're going to have to, as I said, agree to disagree. The findings were based solely on the analysis relating to the 911 call. I'm shaking my head because you are completely, again, ignoring the arguments, the pleadings that were before the trial court when he originally denied the motion to suppress. And again, what you're doing is ignoring it. He made a finding of fact in light of the State's argument, which is several pages of their memorandum that discusses the very argument that you're making here. And I completely understand that, Your Honor. He pretty much, though, said on remand that in essence, I mean, with all due respect, in essence, he said I he's disagreeing with his own findings. And I didn't really say that. I didn't consider. He didn't even mention his original findings. Yes. No, no. Well, he, no, he. He mentioned them in the context of that he was wrong. He was in error in finding that the defendant's flight or running away justified the search. With all due respect, I don't think that's completely accurate. I think he did go beyond and say I did not address the alternative issue because I thought I was completely accurate, that I believe that the stop and frisk was appropriate. I believe that the fleeing attenuated any concern. I did not address. And he said he did not have to address that because he believed the other basis. Correct. However, in his findings of fact, he specifically said they were not violating any law. And, again, I'm not disputing that. I'm saying that his analysis was, I think, changed on remand. In addition, what we haven't discussed, it's in my brief, what we haven't discussed is there was, there is no forfeiture because, again, we don't have to, we didn't have to get into that either. It would have been ridiculous to expect the state's attorney to say we won, we want you to also address the alternative issue, both facts and law. That's not ridiculous at all. In fact, that's what sound judgment as a trial lawyer, whether or not you're a defense attorney or a prosecutor, is to ask the trial court to make alternative findings, especially when those findings would bolster his original findings. Your Honor, I haven't ever done it on appeal in 35 years. I haven't seen a case. I'm not saying it might not be smart. Obviously, given the circumstances of what happened here, obviously I'm not disputing it would have been better. But the state didn't even ask the trial court to revisit those factual findings. Correct. And we didn't raise the issue on appeal. And you didn't do it on remand. All you did was rehash the original arguments. I think the state did on remand say we need you to reconsider this. There was no new evidence. Well, was there new evidence? No, but there was a, certainly there was a major factor that if not new was different. And the difference is that the trial judge also specifically said, wait a second, I'm confused, I'm puzzled by why this Court reached the analysis it did in general, because it confused a significant fact. And I think that, alternatively, this Court can and maybe should reweigh the totality of circumstances based on its finding that the 9-1-1. May I finish my thought? That the stop, to the extent that it was appropriate initially, should have stopped as soon as the 9-1-1 caller said you have the wrong person. Well, we know for a fact that not only was that not accurate, we know for a fact that the trial judge, you know, again, the whole case is a little bit strange. The trial judge went a step further and the finder of facts said we know the Adams family. Not only were they not the 9-1-1 caller of the scene, which would completely change, we believe, this Court's analysis on the totality of circumstances. To the extent that totality of circumstances, that was a big factor in our argument, that not only was the late at night, was there a call, an altercation with a possible gun, not only the concern that defendant had potentially, the officers testified, all of them, that they were concerned that defendant might be armed, but the officer specifically said the fact that the Adams showed up at the scene actually made us more suspicious because we believe that they were trying to get our attention off of defendant. And based on that and his activity, that that is why we felt we needed to pat him down. To the extent that this Court said no, it's the opposite. Once the Adams were on the scene, that should have stopped. Well, that was inaccurate. It actually added to the totality of circumstances. And in this strange case, the Court went a step further and said we know them. The fact that the Adams appeared in the scene made it even more suspicious, justified even more so the concern that the officers had, therefore justifying the stop and frisk. So that is, again, the fact didn't change. What did change was this Court's analysis of that fact. And if any fact is like, again, the finding of the trial judge saying this Court made an error, a factual error, and made, again, a bizarre finding of fact that if I, as sitting as finder of fact, had analyzed the Adams' appearance on the scene, I know that I would have taken even a step further. In essence, is the judge allowed to interject their own knowledge? No, but the judge is allowed to weigh the credibility of the police officer. And the Adams show up, there's already been a stop. There's been a stop. Was there a rest? No. And when he tried to walk away, he orders them to stop again, and they stop, and then the Adams show up. Correct. Okay. So, again, it's the initial stop that's at issue here. So it is the initial stop. It is, but it isn't because when you have a report, again this is the original stop. Once they said, we don't know anything about a shooting, we don't know anything. The justification, the justification is. Forget about the Adams. Right. Because the stop occurred before that. The justification is when you have this type of a 911 call, it's not exactly equivalent to if you show up at a house and you have a domestic dispute. But if you have a call that there's an altercation with a possible gun, the police have to investigate. If there's somebody back of the house where the altercation occurred lying dead, they were interviewing. The evidence also shows, I believe, that Denise Dickinson had gone and approached the Adams and said, your nephew is involved in this. People were, like, out to get him. So he actually was involved in this occurrence. The people, obviously the police didn't know it at the time. Right. Thank you, Mr. London. Thank you. The Court thanks both parties for their arguments today. The case will be taken under advisement. A written decision will be issued.